M. M. WILSON, Appellee, v. J. A. BECK, MRS. J. A. BECK MRS. W. P. JACQUITH, Appellants.

**Real property:** BOUNDARIES: ACQUIESCENCE: ESTOPPEL. Where the
1 grantor of land points out to his grantee at the time of sale a traveled highway as a boundary of the land conveyed, which was designated on a plat showing an untraveled road, and also pointed out the same boundary to a purchaser from his grantee, and both parties thereafter claimed up to the traveled road and improved and occupied the premises with respect thereto, the grantor was estopped to claim as against them that the boundary was fixed by the platted but untraveled highway, rather than the one designated and used; especially where the land thus occupied and claimed would belong to him if not to his grantees.

**Same:** ADVERSE POSSESSION. Title by adverse possession cannot be
2 acquired by acts done in relation to the property which are as consistent with the idea of harmless encroachment, without the thought of acquiring an interest therein, as they are with ownership or claim of right.

**Same:** BOUNDARIES: DESCRIPTION. The boundaries of platted land
3 are governed by the plat measurements, where the description in a conveyance is indefinite or the grantor did not point out and designate the boundary so as to include other land.

*Appeal from Dickinson District Court.*—HON. A. D. BAILIE, Judge.

TUESDAY, JUNE 3, 1913.

PROCEEDING to quiet title upon petition and cross-petition. Decree, from which both parties appeal. *Affirmed* on defendants' appeal. *Modified* and *Affirmed* on plaintiffs' appeal.

*F. H. Helsell,* for appellants.

*Francis & Owen,* for appellee.

WITHROW, J.—Defendants' appeal was first perfected, and in this opinion they will be designated as the appellants.

By petition filed in the district court of Dickinson county, plaintiff (appellee) claimed to be the owner in fee simple of lot 67 of block 1, in Haskell & Smith's First Addition to Okoboji Park, according to the recorded plat thereof; said plat having been duly executed and recorded August 22, 1889. That the plat describes and plats said lot 67 as bounded on the west by West Okoboji Lake, and upon the north and east by the public highway; said lake forming the west line thereof, and the public highway forming the north and east line, the highway extending down to the lake shore, bringing said lot to a point at its north end. That plaintiff's immediate predecessors in right were three Crawford sisters, to whom conveyance was made by defendant J. A. Beck and A. E. Haskell, then joint owners; and at the time of such conveyance the highway had been dedicated by the execution of the plat, and had been laid out and established as the same is now situated; and that Beck in selling said lot to the Crawford sisters pointed out to them and sold to them the property known as lot 67, which plaintiff claims by particular description to be as follows:

A tract of land beginning at the northwest corner of lot 66 of block 1, of said Haskell & Smith's First addition to Okoboji Park; said point being marked by a stone, which stone bears south 63 degrees and 48 minutes west from the northeast corner of section 19, township 99, range 36 west, of the 5th P. M., in Dickinson county, Iowa, and is 2,743 feet distant therefrom, running thence north 50 degrees east on a line between lot 66 and lot 67, of block 1, of said Haskell & Smith's First addition, aforesaid, one hundred and twenty-six feet; thence north 26½ degrees west along the westerly side of the public highway a distance of two hundred and

sixty-six feet; thence north 57 degrees west along the south-
westerly side of said public highway a distance of one hundred
and fifteen feet to the shore of West Okoboji Lake; thence
south 20 degrees east along the easterly shore of West Okoboji
Lake a distance of one hundred and seventy-five feet; thence
south 15¾ degrees east along the easterly shore of West
Okoboji Lake a distance of two hundred and twenty-five feet
to the place of beginning.

That ever since said property was platted lot 67, as
above described, has been used and occupied by plaintiff and
his immediate grantors, and they have had and held open
and uninterrupted adverse possession of said premises. That
the defendants have never made claim to any part of said lot
until recently, when in plaintiff's absence, the defendants, Mrs.
J. A. Beck and Mrs. W. P. Jacquith took possession of a
portion of the same, and without his knowledge or consent,
and have refused to surrender possession, and as plaintiff
is advised, make some claim of ownership. That during all
of the years of their occupancy plaintiff and his immediate
grantors, under claim of full title, have made valuable im-
provements upon said lot, and have continuously claimed all
of said premises as a part of lot 67. He pleads that defendant
J. A. Beck had knowledge of such and of the claims of plain-
tiff and his grantors, and that he is estopped from asserting
any claim to any part of said premises. Decree is prayed
quieting his title.

The defendants, not admitting plaintiff's ownership of
lot 67, say: That the property in dispute with other lands
was platted in 1888, so as to make separate and salable lots
on West Okoboji Lake. That in 1895, J. A. Beck, defendant,
became the owner of the land thus platted. That at all
times since then the original plat has been of record, giving
full notice of the description and size of the lots, and that
by such plat it is shown that the land side or east side of
said lot was one hundred and seventy-five feet in length and
no more, extending from the northeast corner of lot 66 as

platted; and that plaintiff's claim of ownership, outside of lot 67 as so platted, is of land not included in lot 67, which is the property of defendant J. A. Beck; and denies that plaintiff or his grantors have had adverse possession or any rights in said land outside of said lot 67 as bounded and designated by said plat.

Defendants plead estoppel against the plaintiff, based upon the claim that with knowledge of what they were so doing and of their claims, and without objection, he permitted valuable improvements to be made by them upon the property in dispute.   The defendants further plead that, before purchasing, the plaintiff was informed orally of the corner of the said lot, and that he cannot now assert legal or equitable title to the outlying land.   Upon the facts pleaded by way of defense, J. A. Beck bases his cross-petition and prays for affirmative relief.

The lower court decreed that plaintiff is the owner of a tract of land, including all of lot 67, as claimed by defendants to be the true lot, and in addition land immediately adjoining it, limiting the northern boundary to the point designated by the plat, but extending it easterly to the highway as traveled along the highway to a point in line with the southeast corner of the lot, and thence by line connecting the highway with said corner.   The remainder of the tract in dispute was decreed to be the property of defendant J. A. Beck.   With the exception of the barn, which rests upon that part decreed to Beck, all of plaintiff's improvements are upon the lot as found to belong to him.

I.   The original plat of lot 67 shows it to be triangular in form, its base being the north line of lot 66, with a width of eighty-two feet; its west or shore line commencing at the northwest corner of lot 66, thence following the meanderings of the lake for a distance of one hundred and ninety-two feet, and there connecting at its apex with the west or southwest line of a highway designated as Lake Shore Road, thence

1. REAL PROPERTY: boundaries: acquiescence: estoppel.

southeasterly for a distance of one hundred and seventy-four feet to the northeast corner of lot 66 as platted.

The following plat used by both parties will aid in a better understanding of the situation and of the claims of the parties:

The evidence is clear that Lake Shore Road, as platted, was never used as a way of public travel; that the character of a portion of the ground over which it was platted was broken, and the road as actually traveled and publicly used was some distance to the east, as indicated on the plat. That which was platted at Lake Shore Road was never replatted for any purpose, but was used by adjacent owners without restriction. The defendant Beck is shown to be, or to have been at the time which is material to our inquiry, the owner of the land on both sides of the road as platted and the road as used. After this purchase from him, with his knowledge and without objection, the Crawford sisters, grantors of plaintiff, built their cottage at the place designated on the plat, a considerable part of it being outside of the lot limits as claimed by the defendant Beck, and during the seasons it was under their exclusive control. After his purchase the plaintiff made other improvements, among them a barn, which is situated east of the Lake Shore Road as platted and

west of the traveled highway. This was done with the knowledge of the appellant Beck without objection on his part, and with no asserted claim that it was on his land. It is quite evident from a reading of the testimony that in making such improvements. the Crawford sisters and plaintiff believed that they were building on their own land, and it is fairly deducible from the record that defendant Beck knew that they so believed and understood their rights, and with such knowledge made no objections.

It also may be fairly concluded from the evidence that in making the sale to the Crawford sisters, and later when plaintiff contemplated purchase from them, appellant Beck pointed out to them the traveled road as the east boundary of the lot, there being no visible evidence of the platted road. Under such a state of facts it would be inequitable to hold that plaintiff, the appellee, should be held to the limits of the original plat as claimed by appellant to mark his eastern boundary, where, as the record shows, the land thus occupied and used, with its valuable improvements, barring possible claims of the public, would be his if not found to belong to his grantees. *Rowell v. Weinemann*, 119 Iowa, 256-260. *Anderson v. Buchanan*, 139 Iowa, 678.

We do not lose sight of the fact that this conclusion makes the base line of plaintiff's lot longer than is shown in feet measurement on the recorded plat; but a title which arises from acquiescence or estoppel is not necessarily limited by fixed and platted boundaries. This acquiescence extended over a period of about fourteen years. Appellant cannot now be heard to deny, as between himself and appellee, that the true boundary on the east is the traveled road. *Miller v. Mills County*, 111 Iowa, 654; *Lawrence v. Washburn*, 119 Iowa, 109; *O'Callaghan v. Whisenand*, 119 Iowa, 566; *Quinn v. Baage*, 138 Iowa, 426. The claim of appellant that a public highway, once legally dedicated, cannot be vacated by the act of the dedicator presents a question not necessary to be now considered. No public rights in the disputed land are presented in this case. It is a determination between the

parties to the action alone; and the decree of the lower court properly so limited its finding.

II. The conclusion thus reached does not cover all the rights of the parties. As noted, the claim of the appellee, Dr. Willson, is that the west boundary of the traveled highway must be taken as the true boundary of lot 67 for its entire distance from the connecting line extending from the northeast corner of lot 66 to a point where it reaches West Okoboji Lake, and that the west boundary of the lot must be the meandering line from the northwest corner of lot 66 to a point of connection with the west line of the traveled highway. The evidence on the part of plaintiff, by himself and his predecessors in title, was to the effect that they exercised exclusive control and asserted ownership over the entire tract in dispute for a period of more than ten years, and thereby acquired title by adverse possession. The lower court evidently found against this contention, and in so holding we think it was right. While the evidence shows that there were acts done in relation to the property which were entirely consistent with ownership or claim of right, they were equally consistent with the idea of those harmless encroachments upon unoccupied property which are often committed without thought of thereby securing a right in the property itself, and we think do not show such possession as would ripen into title. Neither can we hold from the evidence that appellant, in pointing out the property to his grantees, represented that it included all between the north line of lot 66, the west line of the traveled road, and the lake.

*2. SAME: adverse possession.*

While it is clear that lot 67 as platted and as sold by him was represented to have the highway as its eastern boundary, we think it is not established that the purchasers understood or that he intended that the shore boundary should extend to an intersection with the road. The Crawford sisters did not so understand him, but, on the contrary, that there was

*3. SAME: boundaries: description.*

a portion to the north, not conveyed, owned by the state, to which they might ultimately acquire title by adverse possession. It was an indefinite description, and, being so, the parties would take according to the plat measurement as to the shore line. The finding and decree of the lower court has that support in the evidence that leads us to approve it, with this exception: By its decree the north line of the lot is fixed to commence at the point which by the recorded plat was the north end of the lot, from thence due east to the west line of the traveled road, etc. The line thus fixed leaves plaintiff's barn upon that part of the property awarded to appellant, and authorizes its removal within a time fixed. As we have stated, the barn was built with the knowledge of appellant, without objection by him, and in the belief by plaintiff (appellee) that he was building on his own land, all of which appellant knew. Paintiff should not now be disturbed in the possession thus had. The north line should be so run from its starting point, as fixed in the decree, as to include appellee's barn within that found to be his property; the line so run to be projected directly from the starting point to the west line of the traveled road, and making the north line of the barn as resting upon the north line of the property. From the plat filed we conclude this may be done without injury to any permanent improvements.

The cause is affirmed on defendant's appeal, and modified and affirmed on plaintiff's appeal. Cause remanded for such further proceedings as may be necessary to designate the north line of the lot as herein fixed, and for decree in accordance. The costs on appeal will be taxed as follows: Appellants to pay all costs excepting the printing of appellee's argument, which is taxed to appellee.

*Modified* and *Affirmed.*